OPINION OF THE COURT
Philip S. Straniere, J.
*279 Claimant, Joseph DeFelice, commenced this small claims action against the defendant, Jon Costagliola, Esq., alleging that the defendant breached a contract with the claimant. Defendant filed a counterclaim. The caption was amended to reflect the correct spelling of the defendant’s name. A trial was held on April 23, 2009. Claimant appeared without counsel. Defendant was represented by an attorney.
On December 10, 2008, claimant and Elaine DeFelice purchased the premises, 105 Wirt Avenue, Staten Island, New York, from the seller, Kathleen Able (it appears that her correct first name is Catherine). Claimant was represented by Robert E. Brown and seller was represented by the defendant, Jon Costagliola. Claimant has submitted a copy of what purports to be the contract between the parties. The court is using the word “purports” because the document is undated except for the year “200” (which is obviously an incomplete entry because at a minimum the document would have been prepared after 1440 when Johannes Gutenberg invented moveable type). The copy submitted is not a final copy of the contract because it is only signed by the claimant and Elaine DeFelice. The seller is not a party to the agreement before the court. The lead warning statement is signed by the purchasers as “sellers.” The fact that the copy before the court is not the final agreement is significant because there are certain handwritten alterations to the document none of which have been initialed by either the buyers or the seller. It should also be noted that the HUD-1 prepared at the closing of title lists the sellers as Ted Able and Catherine Able, neither of whom is named as a defendant in this action. Neither has Elaine DeFelice, the cobuyer, joined this suit as a claimant.
Claimant testified that when he moved into the premises on December 12, 2008 the furnace was not operating properly. Claimant had temporary repairs done on December 13, 2008 at a cost of $425 and then on December 18, 2008 paid $1,800 for the installation of a new furnace. Claimant spoke to his attorney, who, the claimant credibly testified, advised him to sue the seller’s lawyer because the seller allegedly had moved from New York. There is no evidence as to the new address of the seller and if she is beyond the jurisdiction of the court.
Claimant stated that he hád a structural inspection performed by an engineer, Edward Sktoglic (spelled phonetically). If the inspector prepared a written report of his inspection, it is not part of the record. However, there is a page attached to the *280 contract with a handwritten notation of “Exhibit A” and a heading that it is an “Engineer Inspection for 105 Wirt Ave. Buyer Mr. and Mrs. DeFelice.” Item “4.” of that list states: “Thermostat may be defective, fan does not shut off. I shut the circuit breaker.” The page is unsigned and it does not indicate the source of the information. Effective December 1, 2005, home inspectors are to be licensed in New York State (Real Property Law art 12-B) and they are required to provide a written report to the client (Real Property Law § 444-b [5]). What is before the court is not a formal report such as should be prepared by a person or entity licensed. It is a one-page typed summary listing seven items which was transmitted by fax October 17, 2008 from Remax United, one of the real estate brokers. The court, would hope that the claimant did in fact have an inspection done by a licensed home inspector as it would have provided important information as to the condition of the house prior to entering into a written contract for its purchase. If he paid for such a report he should have received a copy rather than a typed page from a real estate broker.[1] The list which was attached to what appears to be the copy of the contract signed by the buyers and submitted to the sellers indicates the claimant knew about the problem with the heating system prior to entering into a written contract with the seller and unless there was an amendment to the contract or an adjustment at the closing of title, claimant bought the property “as is” as provided in paragraph 12 of the preprinted contract. Paragraph 16 (f) required the heating system to be delivered in working order only as of the date of closing and there is no showing that it was not functioning properly at the date of closing. Claimant has presented no evidence that he raised this issue at closing of the defective furnace after he conducted his pre-closing walk-through inspection. Presumably the furnace was in working order on the date of closing when he checked it on the walk-through.
Defendant pointed out that the claimant conducted a preclosing walk-through inspection and had an opportunity to test the mechanical systems to insure they were in working order (rider to contract U 30). Defendant stated that there was a $50 credit given to the claimant because the premises was not in *281 broom clean condition and that was the only adjustment arising as a result of the walk-through. The credit, however, is not reflected on the HUD-1. The HUD-1 was prepared by claimant’s counsel who acted as the settlement agent at closing as well.
Claimant admitted that he had no contractual relationship with the defendant; that the defendant was not his attorney; that the defendant made no representations as to the working order of any systems in the house; that he, the claimant, had made no attempt to locate the post-closing address of the seller; that there was no escrow held at closing for this item or any other eventualities; and that his attorney advised him to sue the defendant. This is another case of what appears to be a disturbing trend of litigation being brought by persons suing attorneys who did not represent them for that attorney’s proper representation of his or her client. The theory behind bringing these baseless legal actions being that owing to the small amount of money involved, the lawyer would pay the claim rather than engage in the cost of litigation.
Perhaps claimant’s attorney could have given claimant better advice if he was not wearing so many hats in this transaction. Robert E. Brown was claimant’s lawyer and he was the settlement agent at the closing — meaning he was representing the lender, Wells Fargo Bank, N.A. This is a common practice fraught with peril for an attorney and a potential conflict of interest. For instance, who is the lawyer representing when the lender’s closing instructions contain a requirement which is adverse to the client’s interest or raise an issue beyond the scope of the contract of sale? The abstract company at the closing, Global United Abstract, Inc., has the same address as claimant’s attorney designated as his in the HUD-1, 2409 Richmond Avenue, Staten Island, New York. Apparently Robert E. Brown has more than one office as 1880 Hylan Boulevard, Suite B, Staten Island, New York is reflected on the check he issued at the closing. This is the same street address listed for Global United Abstract, Inc. on its filing with the Department of State, Division of Corporations. The only difference being in the suite designation. The attorney registration records do not list a Robert E. Brown at either address.
Further, the check issued to the seller at the closing was from an account maintained at Citibank, N.A. designated “Robert E. Brown, PC Control Account.” The court questions what exactly is a “control account” because it sounds like a fund from which to pay Maxwell Smart and Agent 99 in their battle with KAOS *282 and not an account designation permitted by the attorney disciplinary rules. Code of Professional Responsibility DR 9-102 (22 NYCRR 1200.46) provides, among other things, the criteria an attorney must follow in regard to the maintenance of bank accounts, and states:
“(b) Separate accounts.
“(1) A lawyer who is in possession of funds belonging to another person incident to the lawyer’s practice of law, shall maintain such funds in a banking institution within the State of New York which agrees to provide dishonored check reports .... Such funds shall be maintained, in the lawyer’s own name, or in the name of a firm of lawyers of which he or she is a member, or in the name of the lawyer or firm of lawyers by whom he or she is employed, in a special account or accounts, separate from any business or personal accounts of the lawyer or lawyer’s firm, . . . into which special account or accounts all funds held in escrow or otherwise entrusted to the lawyer or firm shall be deposited . . .
“(2) A lawyer or the lawyer’s firm shall identify the special bank account or accounts required by [section 1200.46 (b) (1) of this part] as an ‘Attorney Special Account,’ or ‘Attorney Trust Account,’ or ‘Attorney Escrow Account,’ and shall obtain checks and deposit slips that bear such title. Such title may be accompanied by such other descriptive language as the lawyer may deem appropriate, provided that such additional language distinguishes such special account or accounts from other bank accounts that are maintained by the lawyer or the lawyer’s firm.”
Nowhere in the rule is an account designated as a “control account” permitted. It is hard to believe that Citibank, which presumably is versed in the New York rules for the maintenance of attorney bank accounts, would deliberately create accounts in violation of the attorney ethics rules. On the other hand, this is the same Citibank which had a clause in its New York mortgage forms making mortgage transactions subject to California laws (Bonior v Citibank, N.A., 14 Misc 3d 771 [2006]). It is the same Citibank which has elected to have its credit card agreements not governed by New York law, which has a usury limit, but by the laws of South Dakota, which has none (Citibank [SD], N.A. v Mahmoud, 19 Misc 3d 1141[A], 2008 NY Slip Op 51091[U] [2008]). Perhaps if Citibank paid more attention *283 to details, such as the requirements of the disciplinary rules, it would not be “too big to fail.” One purpose of the account designations set forth in the rules is so that persons receiving the checks know the source of the funds. Checks from an attorney trust, attorney escrow or attorney special account are generally accepted in transactions as “good funds.” These checks are usually received by the payee with the assurance that there is money in the account to pay the instrument and there is no need to have the instrument certified.
In further support of the improper nature of this account is the language set forth in Regulations of the Banking Department (3 NYCRR) § 38.7 which provides:
“Prohibited conduct
“(a) No mortgage broker, mortgage banker or exempt organization,[2] as is applicable to each entity, shall: . . .
“(7) disburse the mortgage loan proceeds in any form other than, as applicable, direct deposit to customer’s account, wire, bank or certified check, or attorney’s check drawn on a trust account” (emphasis added).
Absent some explanation from attorney Brown and Citibank, it appears that the account used to disburse the mortgage proceeds from this transaction is not in compliance with the disciplinary rules. Whether this is a result of the actions of the attorney or the bank cannot be determined from the information before the court. If this is in fact a Citibank “program” for attorneys then Citibank as an approved banking institution should either ensure it is in compliance with the disciplinary rules or should stop offering such accounts. Ultimately, the attorney whose name is on the account will be the person who will have to answer if the account is not being properly maintained.
Claimant’s cause of action is dismissed on the merits. Defendant has no personal liability for the actions or inactions of his client. Defendant is not a stakeholder pursuant to an escrow agreement nor did he personally promise to perform any obligations for his client. This suit is completely baseless. The court commends the claimant for being honest and forthright admitting that his attorney suggested that he bring this suit; however, there are consequences for his actions. Defendant was required *284 to incur the expense of hiring an attorney to represent him in this matter and was subjected to public ridicule as a defendant in a crowded small claims courtroom in regard to an alleged breach of contract arising from his work as an attorney.
Judgment for defendant on claimant’s cause of action.
Defendant’s counterclaim is granted to the extent that a hearing will be held on the issue of what damages, if any, the defendant has incurred as a result of claimant’s frivolous litigation.
A copy of this decision will be sent to the New York State Banking Department and the Appellate Division, Second Department, for investigation of the propriety of “control accounts.”

. The court questions as to whether such an inspection was ever performed as there is no indication of payment for one on the HUD-1 as a charge “paid outside closing” where all of the borrowers’ expenses Eire to be summarized.

. See 3 NYCRR 39.2 (a) for the definition of exempt organization, a definition which covers almost all institutional lenders doing business in New York State apparently even Citibank.